City of Chicago v. Crooker.

# CITY OF CHICAGO
## v.
## JAMES R. CROOKER.

2  279
82  211

2    279
99   ⁵534

1. CITIES—DUTY TO REPAIR SIDEWALKS—NEGLIGENCE—A QUESTION FOR THE JURY.—The question of negligence on the part of a city in failing to repair its sidewalks, is for the jury to determine, and the question having been fairly presented to them upon the evidence, their finding should not be disturbed. On an examination of the record in this case the court are of opinion that the verdict is supported by the evidence.

2. KNOWLEDGE OF EXISTENCE OF THE DEFECT PRESUMED.—The testimony showing that the defect in the sidewalk had existed for a number of months it must be presumed to have been known to the proper officers and employes of the city.

3. LIABILITY OF CITY.—Although the law requires of the city the exercise of only reasonable care in regard to the safety of its sidewalks, there appears in this case to be a manifest want of even reasonable care, and an injury having resulted therefrom, the city cannot be exempt from liability.

4. ASSESSMENT OF DAMAGES.—The computation of damages in cases of this character is a matter within the sound discretion of the jury, and courts should not interfere with their finding, unless the amount is so excessive as to give evidence of passion or prejudice on the part of the jury, and even though an appellate court might feel better satisfied with a smaller verdict, this would of itself be no ground for a reversal. It appearing from the evidence that the injury in this case was of permanent character, with a consequent loss of business and diminished physical ability to conduct business, a verdict of $4,000 damages is not considered excessive.

5. PLEADING—AVERMENTS IN DECLARATION.—Although the declaration does not in terms aver a permanent disability, it does set out by proper averments the nature of the injury received, and under such averment it was competent to show the character and extent of such injury, not only at the time it was received, but also at any subsequent period during its continuance. The averment was sufficiently broad to admit proof of all the consequences necessarily resulting from such injury.

APPEAL from the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding.

Mr. R. S. TUTHILL, for appellant.

Mr. H. H. THOMAS, for appellee; upon the question of measure of damages for permanent injury, cited Frink et al. v.

Schroyer, 18 Ill. 416; Slater v. Rink, 18 Ill. 527; Ill. Cent. R. R. Co. v. Bonn, 5 Wall. 90; City of Chicago v. Jones, 66 Ill. 349.

BAILEY, J. Appellant asks for a reversal of the judgment in this case on the grounds, first, that the verdict is against the evidence; and second, that the damages awarded by the jury are excessive.

The suit was brought by appellee against appellant to recover for a personal injury received by appellee, by reason of a defective sidewalk in one of the public streets of the city of Chicago. It appears from the evidence, that at about nine o'clock in the evening of October 27th, 1875, appellee left the Burdick House, which is situated on the southwest corner of Wabash avenue and Adams street, with a view of taking a street car on Wabash avenue, for Twenty-second street. As he got to the sidewalk a car was passing, which he hailed. The car passed by, and he started at a rapid walk to overtake it, and in doing so stepped into a hole in the sidewalk and fell forward, striking his left knee on the curbstone, causing a transverse fracture of the *patella*.

It is argued, on behalf of appellant, that the hole in the sidewalk was not a dangerous defect, and that therefore the city was guilty of no negligence in failing to repair it. It would be a sufficient answer to this proposition, that the question of negligence in failing to repair the sidewalk was pre-eminently a question for the jury, and it having been fairly presented to them upon the evidence, their finding should not be disturbed. But after carefully examining the record, we are disposed to go further and say that, in our opinion, the finding of the jury is in accordance with the preponderance of the evidence.

It appears that the sidewalk in front of, and immediately south of the Burdick House, on Wabash avenue, was a plank walk, the plank being laid across the walk, and reaching from the wall of the buildings to the curbstone. The hole in question was situated just south of the south line of the Burdick House. A portion of a plank next to the curbstone, about ten or eleven inches in width, and between three and four feet in

length, was broken off, leaving a hole of those dimensions, and about one foot in depth. There is, it is true, some difference in the recollection of the witnesses as to the dimensions of the missing plank, but they all agree in making it sufficiently large to be capable of causing the injury which appellee has suffered.

The testimony is undisputed that this defect had been in existence for a number of months, and it must therefore be presumed to have been known to the proper officers and employes of the city.

It is doubtless true that the law requires of the city the exercise of only reasonable care in regard to the safe condition of its sidewalks, and does not require it to keep them in such condition as to render accidents thereon impossible. We think, however, in this case there was a manifest want of even reasonable care, and injury having resulted therefrom, we know of no rule of law or justice whereby the city can be exempted from liability.

The jury awarded appellee $4,000 damages, and we are called upon to set the judgment aside on the ground that these damages are excessive. In actions of this character the assessment of damages is a matter within the sound discretion of the jury, and courts should not interfere to revise their findings unless they are so clearly and manifestly excessive as to give evidence of passion and prejudice on the part of the jury. Even though an appellate court might feel better satisfied with a smaller verdict, that of itself would not be a sufficient ground for setting it aside.

The evidence shows that the actual expenses incurred by appellee, including his board and loss of salary, during the period of confinement and total disability caused by his injury, amounted to $854. The evidence further shows, beyond contradiction, that appellee has suffered a permanent disability in consequence of his injury. Dr. Hanson testifies: "I have examined the injured knee, and find the *patella* is united by a ligamentous union, with three-fourths of an inch between the parts of the fracture. I don't think it possible for it to be cured, or ever to be in any better shape than it now is. I never

knew a case of transverse fracture of the *patella* to be united thoroughly." Dr. Danforth, appellee's attendant physician during his illness, testifies: " I have examined plaintiff's knee lately, and find it in about the ordinary condition; fragments are not united closely; are from one-half to three-fourths of an inch apart, and are united by ligamentous union, which is the common result. It is said that an ossific union is possible, but it is very rare. This is a permanant disability. It is not possible for them to unite closer than is already effected. The effect of the injury will be to discount his ability to get about as actively as he did before. There is greater danger of his falling, and greater danger of fracture occurring again—has to move with-greater care—can't step up or descend so rapidly and carelessly as before. There is permanent disability or impairment of locomotion. This injury will never be any better. It is at its best now."

Appellee, both prior to his injury and since, has been employed as a traveling salesman for a Chicago mercantile house. Prior to his injury he was receiving a salary of $1,500 per annum; since the injury, according to his testimony, he has been unable to earn as much as before.

He says: " In my business it is frequently necessary to get on and off freight trains. Have to use great caution, and frequently miss trains, rather than attempt to get on where I could have got on before the accident. I am not able to earn as much as I did before by $300 a year."

In view of all the circumstances disclosed by the evidence, and especially in view of the permanent disability which appellee has sustained, we are unable to say that the damages awarded are excessive.

The point is made by counsel for appellant, that, under the averments of the declaration, appellee was not entitled to give evidence of, or recover for, a permanent disability. It is true, the declaration does not, in terms, aver that appellee's injury was permanent. It does however, aver a transverse fracture of the *patella* of appellee's left knee, and under that averment we think it was competent for appellee to prove the character and extent of such injury, not only at the time of its infliction,

but also at any subsequent period during its continuance. Such proof related to the very injury itself which is the subject-matter of the litigation, and not to mere consequences, more or less remote, flowing therefrom. Had appellee's injury consisted of the loss of an arm, it is manifest that no express averment would have been required to let in proof of its permanency. That would have been a necessary implication. Here we think the averment was sufficiently broad to admit proof of the injury itself through its entire history, and also of all consequences necessarily resulting therefrom.

It is a rule of pleading, whenever the damages sustained have not necessarily accrued from the act complained of, and consequently are not implied by law, that then, in order to prevent surprise on the defendant, the plaintiff must state the particular damage he has sustained, or he will not be permitted to give evidence of it. 1 Chitty's Plead. 396; Olmstead v. Burke, 25 Ill. 86.

This rule, which appellants seek to invoke has, we think, no application to the present case. We perceive no error in the record. The judgment of the court below will therefore be affirmed.

Judgment affirmed.